RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FIRE-DEX, LLC,

> *Plaintiff-Appellee,*

*v.*

ADMIRAL INSURANCE COMPANY,

> *Defendant-Appellant.*

No. 24-3781

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:23-cv-01612—Bridget Meehan Brennan, District Judge.

Argued: May 7, 2025

Decided and Filed: June 2, 2025

Before: THAPAR, LARSEN, and DAVIS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jonathan D. Hacker, O'MELVENY & MYERS LLP, Washington, D.C., for Appellant. Justin S. Greenfelder, BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC, Canton, Ohio, for Appellee. **ON BRIEF:** Jonathan D. Hacker, O'MELVENY & MYERS LLP, Washington, D.C., David W. Walulik, FROST BROWN TODD, Cincinnati, Ohio, for Appellant. Justin S. Greenfelder, BUCKINGHAM, DOOLITTLE & BURROUGHS, LLC, Canton, Ohio, for Appellee. Laura A. Foggan, CROWELL & MORING LLP, Washington, D.C., for Amici Curiae.

_____

## OPINION

_____

THAPAR, Circuit Judge. Jurisdiction is power. The power of the federal courts is not unlimited: we are courts of limited jurisdiction. But when we do have jurisdiction over both the

subject matter of the case and the parties before us, we must exercise that jurisdiction, except in certain limited circumstances.

After all, within the bounds set by the Constitution, it's Congress's call just how powerful we should be. Drawing the boundaries of federal courts' jurisdiction is a policy choice—a choice that the Constitution vests in the political branches. As judges, we respect that choice by exercising jurisdiction that we have and not exercising jurisdiction that we lack.

But there are exceptions to the normal rule of mandatory jurisdiction. This case asks us how broad some of those exceptions are and how they interact with one another. Our sister circuits have provided different answers to this question. We have yet to weigh in until now.

I.

This knotty federal-courts question emerges from an insurance-coverage dispute. Fire-Dex manufactures personal protective equipment for firefighters. Several firefighters and their spouses filed lawsuits against Fire-Dex alleging that its products have exposed them to carcinogens like per- and polyfluoroalkyl substances ("PFAS"). Those lawsuits were consolidated in multidistrict litigation in federal court in South Carolina. *See In re Aqueous Film-Forming Foams (AFFF) Prod. Liab. Litig.*, No. 2:18-mn-02873, 2024 WL 489326 (D.S.C. Feb. 8, 2024).

Fire-Dex had purchased general commercial liability insurance policies from Admiral Insurance Company. Fire-Dex asked Admiral to defend it against the firefighters' lawsuits and to indemnify it against potential liability. Admiral didn't believe its policies covered the firefighters' lawsuits. So it filed a declaratory judgment action in federal court in Ohio asking the court to declare as much.

The district court had diversity jurisdiction. But the statute giving federal courts authority to hear Admiral's declaratory judgment action says that district courts "may" issue declaratory relief. *See* 28 U.S.C. § 2201(a). That permissive "may" allows district courts to decline to exercise their lawful jurisdiction under certain circumstances. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 288 (1995). That is what the district court did with Admiral's

declaratory judgment request, and we affirmed.  *See Admiral Ins. Co. v. Fire-Dex, LLC*, No. 1:22-cv-1087, 2022 WL 16552973, at *10 (N.D. Ohio Oct. 31, 2022); *Admiral Ins. Co. v. Fire-Dex, LLC*, No. 22-3992, 2023 WL 3963623, at *1 (6th Cir. June 13, 2023).

But the legal battle wasn't over.  About a month after we affirmed, Fire-Dex sued Admiral in Ohio state court.  Fire-Dex first sought a declaration from the state court that Admiral had to defend Fire-Dex in the underlying firefighter lawsuits and indemnify Fire-Dex for any liability.  Second, Fire-Dex sought to recover over $25,000 in compensatory damages on the grounds that Admiral had breached its contract with Fire-Dex "by refusing to defend and/or indemnify Fire-Dex" in the firefighters' lawsuits.  R. 1-1, Pg. ID 20.  Third, Fire-Dex alleged that Admiral hadn't investigated Fire-Dex's claims in good faith and that its decision to not defend or indemnify Fire-Dex was made in bad faith.  Fire-Dex sought over $100,000 in compensatory damages and over $100,000 in punitive damages for the alleged bad faith.

Admiral removed the case to federal court.  A week later, Admiral filed an answer and counterclaims:  it sought a declaratory judgment that its policies didn't require it to defend and indemnify Fire-Dex in the underlying lawsuits.  Fire-Dex moved to remand the case back to state court.

Although the case again satisfied the requirements for diversity jurisdiction, the district court remanded Fire-Dex's claim for declaratory relief and Admiral's counterclaim for declaratory relief back to state court.  *Fire-Dex, LLC v. Admiral Ins. Co.*, No. 1:23-cv-1612, 2024 WL 3744573, at *13 (N.D. Ohio Aug. 9, 2024).  The court paired that remand of the declaratory claims with a stay of Fire-Dex's damages claims for breach of contract and bad faith pending the resolution of the state court litigation.  *Id.*

Admiral appealed.  Because the district court's abstention-based remand order of the declaratory claims effectively "surrender[ed] jurisdiction of a federal suit to a state court," we have appellate jurisdiction to review it.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996) (citation omitted).  The same goes for the district court's related decision to stay the damages claims.  That stay would effectively allow the state court to resolve the relevant legal issues, and the state court's resolution would then have preclusive effect in any subsequent

federal proceedings.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983).  So "this order would be entirely unreviewable if not appealed now."  *Id.*; *see also Quackenbush*, 517 U.S. at 713.

## II.

Fire-Dex's removed claim is a so-called "mixed action"—one that seeks both coercive relief (damages) and non-coercive (declaratory) relief.  So, we must first determine what standard should guide the district court's decision whether to exercise jurisdiction.  In making that determination, we keep background principles of federal jurisdiction top of mind.

## A.

That Congress should have the power to delineate the jurisdiction of the federal courts was not a given in the hot summer of 1787.  Some delegates to the Philadelphia Convention believed that the Constitution should mandate the existence of lower federal courts; others thought the only federal court should be the Supreme Court.  *See Haywood v. Drown*, 556 U.S. 729, 745–46 (2009) (Thomas, J., dissenting).  The two sides compromised with Article III: lower federal courts didn't have to exist, but if Congress wanted, it could create them.  *See* U.S. Const. art. III, § 1.  With Congress's greater power to create lower federal courts in the first place comes its lesser power to dictate the extent of their jurisdiction.  *Sheldon v. Sill*, 49 U.S. (1 How.) 441, 449 (1850).

Thus, within constitutional boundaries, Congress decides who decides.  When Congress vests jurisdiction in a federal court, the court generally must adhere to that command.  As the Supreme Court has put it, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction that Congress bestows on them.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

But this case involves one of the few exceptions to this rule:  abstention.  Courts derive their authority to abstain—that is, to decline to hear a case—"from the discretion historically enjoyed by courts of equity."  *Quackenbush*, 517 U.S. at 728.  But abstention can be appropriate

today in actions at law (like damages actions) as well, at least when the district court issues a stay. *See, e.g.*, *id.* at 721, 730–31.

"Abstention is a judge-fashioned vehicle." *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964). That's why abstention "is the exception, not the rule." *Colorado River*, 424 U.S. at 813. Were it otherwise, federal judges' own sense of what cases they are competent to adjudicate would override Congress's determination of the same.

Courts have fashioned a few narrow abstention doctrines that tend to rest on federalism concerns. For example, a federal court may abstain from deciding on the federal constitutionality of a state law if a state court's definitive interpretation of that law would moot the federal constitutional challenge. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). Federal courts may also abstain from interfering with ongoing state criminal proceedings. *Younger v. Harris*, 401 U.S. 37 (1971). Again, traditional abstention doctrines like *Pullman*, *Younger*, and others are "extraordinary and narrow" exceptions to the normal rule of mandatory jurisdiction. *Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959).

While discretion to abstain from exercising jurisdiction is rare, declaratory judgments are different. Congress expressly vested federal courts with discretion whether to entertain actions for declaratory relief. If a party asks for declaratory relief, the court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). In short, whether to grant declaratory relief is discretionary. *Wilton*, 515 U.S. at 286; *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942). Thus, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. In making this determination, district courts have much more leeway in declining to exercise jurisdiction over a claim for declaratory relief than a claim for damages or an injunction. *See id.* at 290.

Mixed actions like the one before us pair a request for coercive relief with a request for declaratory relief. As a result, these actions raise the question of what standard or standards should guide the district court in deciding whether to exercise jurisdiction—ones that normally

attach to claims for coercive relief (like damages and injunctions), those that attach to claims for declaratory relief, or some combination of the two?

1.

Although the framing is complex, the answer is rather simple. Start with coercive claims in mixed actions. If the district court has subject matter jurisdiction over a claim for coercive relief, the court must exercise jurisdiction over that claim unless a traditional abstention doctrine applies. The pairing of a coercive claim with a declaratory claim doesn't affect the district court's unflagging obligation to exercise jurisdiction over the coercive claim.

This rule accords with what the Declaratory Judgment Act does and doesn't do. The Declaratory Judgment Act places "a remedial arrow in the district court's quiver." *Id.* at 288. That is, it empowers federal courts to issue a novel remedy—declaratory judgments. It does not expand the jurisdiction of the federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Nor does it expand federal courts' authority to shirk the jurisdiction that Congress has given them. The presence of a declaratory claim alongside a traditional coercive claim is not a get-out-of-jurisdiction-free card.

Supreme Court precedent supports this approach. In *Meredith v. City of Winter Haven*, the plaintiffs brought a mixed action for declaratory and injunctive relief. 320 U.S. 228, 230 (1943). The Supreme Court held that abstention was inappropriate because none of the traditional abstention doctrines applied. *Id.* at 235–36. That the plaintiffs paired their request for coercive relief with a request for declaratory relief didn't change the ordinary rules of mandatory jurisdiction: the case did not "differ from an ordinary equity suit in which . . . federal courts have been called upon to decide state questions in order to render a judgment." *Id.* at 231. Thus, the district court could decline to exercise jurisdiction only if a traditional abstention doctrine applied. (While *Meredith* didn't confront whether distinct standards should govern coercive and declaratory claims, it did hold that the presence of a declaratory claim doesn't magically take the coercive claim outside the normal purview of traditional abstention.)

*Meredith*'s holding regarding claims for equitable relief in mixed actions applies with full force to damages claims in mixed actions. A court's ability to abstain derives from the

discretionary powers historically enjoyed by courts of equity. *Id.* at 235; *Quackenbush*, 517 U.S. at 717–18. A damages action, by contrast, is legal in nature. And a court has less discretion when issuing remedies at law than equitable remedies. *See Quackenbush*, 517 U.S. at 730. Therefore, a district court cannot enjoy more discretion in a damages-mixed action than in an injunction-mixed action like *Meredith*.

2.

Now, to the other half of a mixed action: the claim for declaratory relief. The fact that the declaratory claim is paired with a claim for coercive relief does not—as a formal matter— deprive the district court of its discretion under the Declaratory Judgment Act. Section 2201 does not distinguish between (1) standalone claims for declaratory relief and (2) claims for declaratory relief paired with claims for coercive relief. The permissive language of § 2201 applies to *all* declaratory claims. *See* 28 U.S.C. § 2201(a). Thus, the more permissive discretionary standard applies regardless of whether the declaratory claim is part of a mixed action.[1]

But in a mixed action, the district court may have less discretion than normal to refuse to hear a declaratory judgment claim. *See Wilton*, 515 U.S. at 290 (noting that district courts may abuse their discretion in declining to hear declaratory judgment actions). Why? Because the

---

[1]Our analysis here holds true regardless of whether a plaintiff's suit first seeks a state court declaration (based on a state law declaratory judgment remedy) and is then removed to federal court or whether a plaintiff first seeks a § 2201 declaratory judgment remedy in federal court. The extent of the district court's discretion to grant a declaratory judgment remains constant no matter how the request for that remedy makes its way to federal court. The Declaratory Judgment Act is procedural; it does not create or alter any substantive rights. *Skelly Oil Co.*, 339 U.S. at 671. So when a state action seeking declaratory relief is removed to federal court on the basis of diversity of citizenship, the Declaratory Judgment Act (and the discretion that attaches to it) are part of the federal procedural law that the federal court applies. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); 14C Wright & Miller's Federal Practice & Procedure § 3738 (4th ed. 2008) ("After the removal of an action from state court, . . . [t]he case will proceed as if it originally had been brought in the federal court."). That is why we apply the permissive abuse of discretion standard to a district court's decision whether to exercise jurisdiction over a declaratory judgment claim "even when the declaratory judgment action was initiated in state court and then removed to federal court." *Boyd v. Martinez*, No. 22-6026, 2023 WL 4903173, at *3 (6th Cir. Aug. 1, 2023) (citing *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 796 (6th Cir. 2022)). In doing so, we're not alone. *See, e.g.*, *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 n.4 (3d Cir. 2017); *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013).

presence of a coercive claim will often significantly reduce the district court's discretion to abstain from adjudicating the declaratory relief claim.

Take the situation when the coercive claim and the declaratory claim hinge on the same substantive legal issue or issues. There, the declaration of rights and responsibilities will usually be a logical "prerequisite" to the award of damages. *Cf. Meredith*, 320 U.S. at 231 (making the same point as to an award of injunctive relief). Abstaining there would risk creating the sort of "piecemeal litigation" that abstention aims to avoid and the "duplicitous litigation" that exercises of discretion under the Declaratory Judgment Act are designed to dodge. *Colorado River*, 424 U.S. at 818 (citing *Brillhart*, 316 U.S. at 495); *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991) (citing *Brillhart*, 316 U.S. at 495); *see also Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007) (noting that if the district court were to abstain in such a scenario, "the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated").[2]

In sum, "established equitable principles" like "efficiency, fairness, and federalism" are the touchstones of a district court's exercise of its discretion in the declaratory relief context. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 300 (1943); *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 801 (6th Cir. 2022) (citation omitted). When a declaratory claim in a mixed action presents the same legal issue as the coercive claim over which the district court must exercise jurisdiction, these equitable considerations will counsel heavily in favor of not abstaining. *Adrian Energy Assocs.*, 481 F.3d at 422.

Our decision in *Adrian Energy* aligns with the standard we adopt today. In *Adrian Energy*, we affirmed the district court's decision to abstain from exercising jurisdiction over a mixed action. *Id.* at 425. *Burford* abstention applied there, so the panel did not lay down a standard governing mixed actions in general. Still, we observed that "judicial economy counsels

---

[2]*See also Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225–26 (9th Cir. 1998) ("Indeed, when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, breach of fiduciary duty, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief. If a federal court is required to determine major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation."); *cf. Chamberlain*, 931 F.3d at 1367–68.

against dismissing the claims for declaratory judgment relief while adjudicating the claims for injunctive relief" when those claims are "closely intertwined." *Id.* at 422. That insight squares with our conclusion today: when the coercive and declaratory claims in a mixed action are tightly linked, it would most likely be an abuse of discretion to abstain on the declaratory claims.

B.

The three conflicting approaches of our sister circuits are unpersuasive. Take each in turn.

1.

The Second, Fourth, and Fifth Circuits apply traditional abstention doctrines to mixed actions as a whole. *See, e.g.*, *VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015); *New England Ins. Co. v. Barnett*, 561 F.3d 392, 395 (5th Cir. 2009); *Village of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999). If the coercive claim doesn't trigger a traditional abstention doctrine, the court must exercise jurisdiction over the entire mixed action. But there's a caveat: if the court concludes that the coercive claim is frivolous or was brought to evade application of the more permissive standard governing declaratory claims, then the court applies that permissive standard to the mixed action. *See VonRosenberg*, 781 F.3d at 735; *Barnett*, 561 F.3d at 395–96.

Both the approach and the caveat have problems.

First, the approach. As explained above, the pairing of a declaratory claim with a coercive claim does not strip the court of its normal, more expansive discretion as to that declaratory claim. Neither the text of § 2201 nor precedent creates exceptions to the rule of declaratory discretion for mixed actions. Therefore, normal abstention principles should not govern declaratory claims in mixed actions. Again, a court very well may abuse its discretion in deciding to abstain from the declaratory claim. *Wilton*, 515 U.S. at 290. And as explained above, the fact that a district court must exercise jurisdiction over the coercive claims in a mixed action may drastically reduce its discretion to not exercise jurisdiction over the declaratory

claims. But there's no legal basis for formally stripping a district court of its discretion over whether to hear a declaratory claim simply because that claim is part of a mixed action.

Second, the caveat for "frivolous" or "evasive" coercive claims has its own set of issues. To begin, federal courts have various ways to deal with frivolous claims. *See, e.g.*, Fed. R. Civ. P. 11; Fed. R. Civ. P. 12(b)(6). Declining to exercise jurisdiction isn't one of them. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (explaining that, in the mine-run of cases, a failure on the merits doesn't implicate subject-matter jurisdiction).**3** Also, there is no administrable way of knowing whether a litigant has paired a claim for coercive relief with a claim for declaratory relief to evade the normal discretionary standard governing declaratory claims. Perhaps the litigant genuinely desires coercive relief. Maybe the litigant tacked on the declaratory relief simply to dot his i's and cross his t's. *See VonRosenberg*, 781 F.3d at 735. Or the litigant really may be trying to evade the permissive declaratory relief standard after all. There is no reliable way for a court to know. A legal standard that judges cannot consistently administer has no business being a legal standard.

2.

Next, the Third, Seventh, and Ninth Circuits have adopted an "independent claim" test. *See, e.g.*, *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017); *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 716 (7th Cir. 2009); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir. 2001). Under this test, when confronted with a mixed action, a court distinguishes between coercive claims that are "independent" of a declaratory claim and coercive claims that are "dependent" on a declaratory claim.

---

**3**In federal question cases, the court may be "divest[ed]" of jurisdiction when the "allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) ("As the case law indicates, a substantial federal question is presented as long as the pleadings invoking federal question jurisdiction are not 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'" (citation omitted)). Of course, this principle has no relevance to this diversity case.

If the coercive claim is independent of the declaratory claim, then traditional abstention rules apply. *Rarick*, 852 F.3d at 228. If the coercive claim depends on the declaratory claim, "the court retains discretion to decline jurisdiction of the entire action" under the permissive declaratory judgment standard. *Id.* at 229; *see also Vulcan Materials Co.*, 569 F.3d at 716–17.

The independent claim test is flawed for a few reasons.

Under one reading of the test, "dependent" coercive claims seem to be a null set. Why? Because some of these circuits have said that a coercive claim can still be independent of a declaratory claim "[e]ven if the legal issues involved in deciding the declaratory claim would be dispositive of" the coercive claim. *Vulcan Materials Co.*, 569 F.3d at 717 n.9. According to some of these circuits, a coercive claim is not "dependent" on a declaratory claim if the factual and legal issues tied up in each claim mirror one another; the coercive claim is dependent on the declaratory claim only if the coercive claim would not "continue to exist if the request for a declaration simply dropped from the case." *R&D Latex Corp.*, 242 F.3d at 1112 (citation omitted). But it is difficult to imagine any coercive claim fitting that bill: no action at law or in equity has "historically been predicated on favorable disposition of a claim for declaratory judgment." *Id.* at 1114.

To be sure, a favorable "declaration of rights" tends to be a *logical* "prerequisite" to a favorable disposition of a coercive claim like one for injunctive relief. *Meredith*, 320 U.S. at 231. But that favorable declaration is not a *legal* prerequisite. A party need not hold a declaratory judgment in one hand to get an injunction with the other. How could it be otherwise? Declaratory judgments received the official imprimatur of Congress and the federal courts only in the 1930s.[4] It would be shocking if a litigant had to first obtain a New Deal-era remedy to receive a centuries-old remedy like an injunction.

---

[4]That being said, as Professor Edwin Borchard observed at the time of the Declaratory Judgment Act's passage: "In equity cases Anglo-American courts have long exercised the power to render declaratory judgments, though not expressly so denominated. The judgments of courts construing wills, interpreting deeds, trying disputed titles to property, real and personal, quieting title and declaring the non-existence of clouds, declaring the nullity of instruments and legal relations, including marriage, establishing boundaries and declaring the validity of bond issues, and judgments in an infinite variety of proceedings not requiring execution are nothing but declaratory."

The same holds true for damages: a party does not need a declaratory judgment to obtain damages. Fire-Dex is thus wrong to argue that "these damages claims would not be ripe until the declaratory claims are decided." Appellee Br. at 25. Imagine that Fire-Dex brought only a breach of contract claim. A court would necessarily resolve whether Admiral had a duty to defend and indemnify Fire-Dex in deciding whether there had been a breach. *Cf. Meredith*, 320 U.S. at 231 (making the same point as to injunctions). The breach of contract claim would still be ripe even if a declaratory judgment didn't precede it.

In sum, on one reading of these circuits' tests, it's difficult to imagine a claim for coercive relief that's "dependent." "Non-declaratory claims are 'independent' of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *Rarick*, 852 F.3d at 228 (quoting *Vulcan Materials Co.*, 569 F.3d at 715). That definition of independent coercive claims would seem to encompass *all* coercive claims.

At any rate, the independent claim test is still flawed even if we don't read "dependent" coercive claims out of existence. That is, even if a coercive claim is considered "dependent" on a declaratory claim when they raise the same factual and legal issues, that is no reason to subject the coercive claim to the Declaratory Judgment Act's more permissive standard for abstention. Similarly, if the coercive claim is independent of the declaratory claim, that is no reason to take the declaratory claims outside the Declaratory Judgment Act's orbit. Pairing a claim for declaratory relief with a claim for coercive relief should not, technically speaking, deprive the district court of its discretion under the Declaratory Judgment Act.

3.

Finally, when confronted with a mixed action, the Eighth Circuit tries to determine whether the claim for declaratory relief constitutes "the essence of the suit." *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008). If it is, then the more permissive declaratory

---

Edwin Borchard, *The Federal Declaratory Judgments Act*, 21 Va. L. Rev. 35, 38 (1934); *see also Fid. Nat. Bank & Tr. Co. of Kan. City v. Swope*, 274 U.S. 123, 132 (1927).

judgment standard applies.  If it isn't, then the less permissive, traditional abstention doctrines govern.

The Eighth Circuit's own precedents reveal that the "essence of the suit" approach is not workable.  For example, in *Horne v. Firemen's Retirement System of St. Louis*, a firefighter (Horne) believed that the City of Saint Louis had discriminated against him because of his age. 69 F.3d 233, 235 (8th Cir. 1995).  The Board of Trustees of the Firemen's Retirement System had voted "to retire Horne" when he turned 60 years old.  *Id.*  Horne "refused" to retire at that time, and he filed administrative charges with the Equal Employment Opportunity Commission. *Id.*  A few days later, the city sought a declaratory judgment in state court; it sought a declaration that "the decision to retire" Horne was lawful and that it could legally remove Horne from its payroll.  *Id.*  That same day, Horne brought claims in federal court seeking "declaratory relief, an injunction to keep defendants from removing him from his job, emotional distress damages, and attorney's fees."  *Id.*

The Eighth Circuit concluded that Horne's suit was "most aptly characterized as one for declaratory judgment."  *Id.* at 236.  Why?  Because declaratory judgment actions can be "sustain[ed]" even if no harm has yet been committed or no loss has yet occurred, and Horne had yet to suffer any "actual harm."  *Id.*

Of course, a successful request for injunctive relief also doesn't require the plaintiff to have already sustained any actual harm.  A key purpose of injunctive relief is to avoid such harm. So why wasn't Horne's request for injunctive relief the essence of his suit?  The Eighth Circuit doesn't say.  Instead, it appears to make value judgments about which claim is more important.  That is not our role.

Had Horne brought a standalone claim for an injunction (or damages, for that matter), he would have had his day in federal court unless one of the narrow abstention doctrines applied. Instead, the doors of the federal courthouse were closed shut on Horne because he paired his

coercive claim for injunctive relief with a declaratory claim—a pairing that litigants make all the time. *See VonRosenberg*, 781 F.3d at 735.[5]

The "essence of the suit" test is not administrable.

\* \* \*

In sum, our sister circuits' standards are unsatisfying and unmoored from Congress's mandates. The best way to honor Congress's directives is to apply the normal rules of mandatory jurisdiction and abstention to coercive claims and the discretionary standard to declaratory judgment claims.[6] If no traditional abstention doctrine applies to the coercive claim, the district court must exercise jurisdiction over that claim. Meanwhile, a district court would still have discretion to decline to decide the declaratory claim. But that discretion will often be abused if the declaratory claim turns on the same legal issues as the coercive claim.

## III.

Applying the rule here demonstrates that the district court erred.

## A.

The district court's decision to abstain was two-pronged. First, the district court abstained from exercising jurisdiction over the declaratory claims and remanded them to state court. *Fire-Dex, LLC*, 2024 WL 3744573, at \*6, \*13. Second, it paired that remand with a stay of the damages claims until the state court resolved the declaratory claims. *Id.* at \*13. (That decision to stay the damages claims was itself a form of abstention: abstention-driven dismissals of damages claims aren't allowed, but abstention-driven stays of damages claims can be. *See Quackenbush*, 517 U.S. at 719, 721, 730.)

---

[5]*Horne* is no outlier. On the contrary, courts applying the "essence of the lawsuit" test "have uniformly found that the 'heart' of the claims are declaratory and the courts therefore had discretion to dismiss both the non-declaratory and the declaratory claims." Katherine A. Gustafson, *To Hear or Not to Hear?—Resolving A Federal Court's Obligation to Hear A Case Involving Both Legal and Declaratory Judgment Claims*, 52 U. Balt. L. Rev. 383, 397 (2023); *see also id.* at 415.

[6]The First Circuit has followed an approach like ours. *See, e.g.*, *Rossi v. Gemma*, 489 F.3d 26 (1st Cir. 2007). But it hasn't expressly addressed the wrinkles associated with mixed actions. *See* Wm. Grayson Lambert, *Unmixing the Mess: Resolving the Circuit Split over the* Brillhart/Wilton *Doctrine and Mixed Complaints*, 64 U. Kan. L. Rev. 793, 819–20 (2016); Gustafson, *supra* note 5, at 417.

In justifying abstention on the declaratory claims, the district court relied on *Thibodaux* abstention, but *Thibodaux* was inapplicable.  And it would have been an abuse of discretion to abstain on the declaratory claims under the normal discretionary standard.  Why?  Because no traditional abstention doctrine supported not exercising jurisdiction over the damages claims, and one of those damages claims turned on the exact same legal issues as the declaratory claims.

B.

*Thibodaux* abstention applies when a suit raises unsettled questions of state law that are "intimately involved with" a state's "sovereign prerogative."  *La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959); *see also Quackenbush*, 517 U.S. at 717.  Classic examples include the extent of a local government's eminent domain power and "the apportionment of governmental powers between City and State."  *Thibodaux*, 360 U.S. at 28.  The aim of *Thibodaux* abstention is to avoid "the hazards of serious disruption by federal courts of state government or needless friction between state and federal authorities."  *Id.*  A contract dispute between two private parties that relates to the state's interests in insurance regulation doesn't fall within *Thibodaux*'s narrow purview.  Thus, *Thibodaux* didn't support abstention on the declaratory claims.

Fire-Dex nonetheless contends that the "novel and unsettled issues" of state law presented here "implicate an important state interest" and justify *Thibodaux* abstention.  Appellee Br. at 29.  But the fact that a federal court is operating in an unsettled area of state law doesn't interfere with the state's sovereign functions.  Otherwise, *Thibodaux* abstention would swallow diversity jurisdiction in cases where state law is unsettled—which is not at all uncommon.[7]  *Cf. Meredith*, 320 U.S. at 236 ("Congress having adopted the policy of opening the federal courts to suitors in all diversity cases involving the jurisdictional amount, we can discern in its action no recognition of a policy which would exclude cases from the jurisdiction merely because they involve state law or because the law is uncertain or difficult to determine.").

---

[7]Of course, federal courts may seek to certify unsettled questions of state law to state supreme courts.  But certification is not abstention.  As the Supreme Court has recognized, certification does "not entail the delays, expense, and procedural complexity that generally attend abstention decisions."  *Arizonans for Off. English v. Arizona*, 520 U.S. 43, 79 (1997); *see also id.* at 76.

C.

Putting *Thibodaux* aside, the district court also could not have abstained from the declaratory claims based on its normal, expansive discretion to not exercise jurisdiction over declaratory claims. Recall that in a mixed action, a district court will often abuse its discretion by abstaining on a declaratory claim where the coercive claim over which the district court must exercise jurisdiction raises the same legal issue as the accompanying declaratory relief claim. This is such a case. Fire-Dex asked the court to (1) provide damages for a breach of a contract due to Admiral's refusals to take certain actions and to (2) separately declare that these same refusals were unlawful. Thus, the answer to the damages question compels an answer to the declaratory relief question—and vice-versa. They are two sides of the same coin. *See VonRosenberg*, 781 F.3d at 735. And no traditional abstention doctrine stood in the way of the normal rule of mandatory jurisdiction over the breach of contract damages claim. Therefore, it would be an abuse of discretion not to exercise jurisdiction over Fire-Dex's declaratory claim and Admiral's mirror-image declaratory counterclaim.

In resisting federal jurisdiction, Fire-Dex contends that the district court's earlier decision to abstain on Admiral's declaratory claim is the law of the case and has preclusive effect. That is incorrect. In a previous iteration of this dispute, we held that the district court did not abuse its discretion in declining to exercise jurisdiction over Admiral's standalone declaratory judgment action. *See Admiral Ins. Co.*, 2023 WL 3963623, at *4. There, we encountered a single claim for declaratory relief. After that decision, Fire-Dex launched a separate, mixed action in state court. That mixed action is what is before us now, following Admiral's removal. As explained above, the district court's possession of mandatory jurisdiction over the coercive claims in a mixed action severely constrains its discretion to abstain as to the declaratory claims—unlike if it faced only the declaratory claim (like in the earlier iteration of this litigation). Fire-Dex's argument fails in light of this critical difference.

\*            \*            \*

Lower federal courts are creatures of Congress. Provided that it acts within constitutional constraints, Congress decides what sorts of cases we decide. Since 1789, Congress has

determined that we should adjudicate certain cases brought by citizens hailing from different states (though it has expanded and contracted that jurisdiction over the years[8]). These determinations have never been uncontroversial. The Constitution's vesting of discretion in Congress to grant us diversity jurisdiction "aroused bitter opposition in the ratification debates, and the controversy has continued intermittently ever since." W. Baude, J. Goldsmith, J. Manning, J. Pfander, & A. Tyler, *Hart and Wechsler's The Federal Courts and the Federal System* 19 (8th ed. 2025). Some like Patrick Henry,[9] Judge Henry Friendly,[10] Chief Justice Burger,[11] and Justice Frankfurter[12] have questioned the wisdom of diversity jurisdiction. Others, from James Madison[13] to Professor James William Moore,[14] have defended it.

---

[8]For example, the Judiciary Act of 1789 extended diversity jurisdiction only to suits "between a citizen of the State where the suit is brought, and a citizen of another State." § 11, 1 Stat. 73, 78 (1789). Today, diversity jurisdiction extends to all suits between "citizens of different States." 28 U.S.C. § 1332(a)(1). Meanwhile, the Judiciary Act of 1789 provided that the amount in controversy must exceed $500. § 11, 1 Stat. 73, 78 (1789). Today, the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a).

[9]3 *The Debates in the Several State Conventions on the Adoption of the Federal Constitution* 542 (Jonathan Elliot ed., New York, Burt Franklin 1888) ("I see arising out of that paper a tribunal that is to be recurred to in all cases, when the destruction of the state judiciaries shall happen; and, from the extensive jurisdiction of these paramount courts, the state courts must soon be annihilated.").

[10]Writing in the *Harvard Law Review* at the age of 25, Henry Friendly advocated the contraction of diversity jurisdiction. "The steady expansion of the jurisdiction of the federal courts, especially since Reconstruction days, has been but a reflex of the general growth of federal political power. That growth will not abate, since it is responsive to deep social and economic causes. Only one aspect of the work of the federal courts is out of the current of these nationalizing forces—the jurisdiction based on diversity of citizenship. This had its origin in fears of local hostilities, which had only a speculative existence in 1789, and are still less real today. The unifying tendencies of America here make for a recession of jurisdiction to the states, rather than an extension of federal authority." Henry J. Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv. L. Rev. 483, 510 (1928).

At age 69, Judge Friendly stood by his initial assessment. Henry J. Friendly, *Federal Jurisdiction: A General View* 140 (1973) ("Although I do not like to be cast in the role of a Cato, I cannot but affirm my deep conviction that these thoughts, believed to be true in 1928, are *a multo fortiori* so in 1972.").

[11]Warren E. Burger, *Annual Report on the State of the Judiciary*, 62 A.B.A. J. 443, 444 (1976) ("I have an obligation to repeat what I have said before, that with a few exceptions which can be dealt with as such, diversity cases have no more place in the federal courts in the second half of the twentieth century, and surely not in the final quarter of this century, than overtime parking tickets or speeding on the highways simply because the highway is federally financed.").

[12]Felix Frankfurter, *Distribution of Judicial Power Between United States and State Courts*, 13 Cornell L.Q. 499, 521 (1928) ("The Civil War, the Spanish War, and the World War have profoundly altered national feeling, and the mobility of modern life has greatly weakened state attachments. Local prejudice has ever so much less to thrive on than it did when diversity jurisdiction was written into the Constitution."); *see also* Felix Frankfurter & James M. Landis, *The Business of the Supreme Court of the United States – A Study in the Federal*

But as Justice Frankfurter recognized, the ultimate wisdom of empowering the federal courts to sit in diversity is not the concern of judges; it's "the concern of those whose business it is to legislate." *Burford v. Sun Oil Co.*, 319 U.S. 315, 337 (1943) (Frankfurter, J., dissenting). "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C.J.). If Congress grants us jurisdiction, we're duty bound to exercise it absent some restriction in law or precedent. *See Meredith*, 320 U.S. at 234–35.

No such restriction is present here. Thus, we vacate the district court court's order and remand for further proceedings consistent with this opinion.

---

*Judicial System*, 40 Harv. L. Rev. 834, 871 (1927) ("But any effort to relieve an overburdened federal judiciary may well, for instance, reexamine the justification of the existing jurisdiction resting solely on diversity of citizenship. The plea for withdrawal from federal courts of litigation solely concerned with local matters has been reinforced by the vast increase of essentially federal litigation and the vigorous movement for state judicial reforms.").

[13]3 Elliot, *supra* note 9, at 533 ("It may happen that a strong prejudice may arise, in some states, against the citizens of others, who may have claims against them."); *cf. Bank of the U.S. v. Deveaux*, 9 U.S. (5 Cranch) 61, 87 (1809) (Chief Justice Marshall explaining the rationale behind vesting diversity jurisdiction in the federal courts); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 347 (1816) (Story, J.) (same).

[14]James William Moore & Donald T. Weckstein, *Diversity Jurisdiction: Past, Present, and Future*, 43 Tex. L. Rev. 1, 1 (1964) ("We contend that experience and sound future planning justify an extension rather than a curtailment of many phases of diversity jurisdiction.").